Mr. Sheets. Thank you. May it please the court. My name is Ray Sheets. I'm here on behalf of Mr. Adams. We raised several issues in our brief, and this afternoon I just want to concentrate on two of those, unless the court has questions on the other three. The two I want to concentrate on, of course, is first the Batson issue, and then the second is the hearsay issue, and both of those are identified as issues number one and two in our briefs. Starting with the Batson issue, Mr. Adams went to trial. He is African American, but for the purpose of this analysis, it doesn't matter what race Mr. Adams is. There was one African American juror of the 29 potential jurors selected. After Wardere, the government used its first strike to strike that African American juror. Trial counsel at the time, Mr. Steve Swift, made an objection to that strike. The court instructed the parties to finish completing their strikes, which the parties did, and then the court conducted a hearing on the defense's Batson challenge. When Mr. Swift described what the basis of the challenge was, he indicated that the juror was African American, so he made the first element of the prima facie showing. The court then asked government counsel, Mr. Vavricek, to explain why the government did strike this African American juror. Mr. Vavricek gave four reasons, and in response to those reasons, Mr. Swift then responded and stated that the reasons really have no merit, and in his experience and history of practicing in the court, this type of thing, which was the striking of African American jurors, happens all the time. The trial court then went through and made a ruling on the Batson issue, overruling it, and in doing so, it determined that the four reasons given by the government were race-neutral, and for purposes of this appeal, we don't have an issue with that ruling except for the third reason. The government stated that because the defendant lived with his parents or the parents lived with the defendant, it was never made clear that that was a legitimate race-neutral reason. At least one other circuit court, the Second Circuit, has found that that is a pretextual reason, and one that should not be allowed. In regard to the other three reasons, the fact that the African American juror had a recent possession of marijuana conviction, the court found that that was race-neutral, and for the other two, the court found it was race-neutral, but the court never conducted an analysis of whether those race-neutral reasons were the real reasons for that black juror to have been struck. Well, counsel, let me quote to you from what the court said. Adams, he didn't call him Adams, the Adams is mine, but the rest of this is a quote, has not shown that the express basis for making the strike was not the actual reason for exercising the strike, page 97, allegedly of the jury's sentencing transcript. Isn't that enough? The defense does not believe that that's enough, Your Honor. I appreciate you bringing that to my attention. Proceed. Tell me why it's not enough. There is no, there is no deliberation that we can see on the record that was done by the court, the trial court. It recited the fact that it believed that the reasons were race-neutral. The court at the time of its decision had a couple things that were important in its consideration. First being, as Mr. Vavracek had indicated in his readings, the government had conducted a investigation of the potential jurors prior to trial. That determined that several of the potential jurors had criminal histories. The only potential juror that was struck that had a criminal history, that was the black potential juror. So we think that the court had to give some deliberation or to give some reasons other than the conclusory statement that it gave. So when the court would have considered, and not only did the the potential jurors, but the court also had the full jury questionnaires that the counsel relied on when they were making their strikes. And those jury questionnaires would have shown that the government's striking of this black juror was not consistent with the reasons that it allowed other white jurors to remain. Now, in my brief, I cite a case from the Fifth Circuit. It's on page six of my reply brief. The case is Reed v. Quarterman from the Fifth Circuit. And it states that when even if the trial court did not consider it, we don't know if the trial court considered anything other than what Mr. Vavracek was saying. So we have no record as to whether or not the district court made this comparative analysis that it was required to do. So do any of the comparator white jurors have either all four or three of the four issues that were raised with respect to the African-American juror? The African-American juror had four things that were identified. The other white jurors that had, for example, a drunk driving conviction or was unemployed, there is no evidence that they had each of those four things together. But in response to that, and of course, that's something that the I would submit that I don't want to sound pithy, but zero plus zero plus zero plus zero equals zero. If it's not a valid reason, if it's a pretextual reason, it's a zero. And we know at least one of those reasons, living with the parents, is a pretextual reason. So I would argue that. But now we've got zero plus one plus one plus one. Well, the zero is a legitimate, yeah, exactly. But I hope my point is getting across in that it doesn't matter if there were 10 pretextual reasons, it still ends up in the same result. But on what basis can we conclude that the other three, even if we accept your argument with respect to the one, on what basis can we conclude that the other three are pretextual? Well, the trial court didn't address that. And I think that's what the defense is saying is significantly lacking in the trial court's analysis. I think the recent case of the Flowers versus Mississippi, in that case, the Supreme Court weighed what the prosecutor said was a legitimate reason and determined what did the prosecutor use that same legitimate reason, claim legitimate reason, in other striking of other jurors. And in Flowers, the state was striking black jurors for reasons that it didn't strike white jurors. And that's exactly what we struck because of a recent criminal conviction, whereas it didn't strike the comparably situated white jurors that had comparable criminal record. So we, our argument is, your honors, that that third factor of that Batson analysis, the third factor that requires a trial judge to make a determination on the record, was there a discriminatory intent or was there, do I take what the prosecutor is saying? That decision wasn't made. The only thing that, and I appreciate the courts reciting that one sentence from the district court's analysis, but we don't believe that that is sufficient. And we think that the district court failed to conduct a meaningful analysis of that third factor. Going on to that hearsay issue that I wanted to briefly address, and I don't want to take away the importance of the other issues that I raised. I think there's some interesting issues in there. But that second factor is regarding a hearsay objection and a lack of foundation objection. So in this case, the government argued that although Mr. Rossi Adams was not directly involved in the robbery, he didn't go into the house, he recruited another person to do so. The government used this prior incident where Mr. Adams had a very large social media following of approximately a million and a half followers. And the government claimed that because he was not able to persuade one of the people that owned this domain name that the government claims that he wanted, he sent out a message on his social media account telling his followers to call or send images to this person. And that person's causing that person's phone to, as that person described, crash. That person described, he claimed he knew that the defendant was responsible for it because other people told him that the defendant was responsible for it. Over the defendant's objections, the government witness was allowed to testify to that. Even though when the government conducted an analysis of the phone, there was no evidence of whatever they were arguing. So that was an important part of the case because the government argued that that was the only other piece of evidence that they had that showed the defendant's exhortive behavior, which led to this incident in July of 2018 regards to the breaking in. But I want to reserve the balance of my time. I think I have about a minute and 30 seconds left. Very well. Thank you, Mr. Sheets. Court will hear from Mr. Baburczak. May it please the court and Mr. Sheets as well. I'm Tim Baburczak from the Attorney's Office here in the Northern District of Iowa. As Mr. Sheets indicated, there are a number of issues in the briefing here. The briefs are quite thick and I was planning as well to focus on the Batson issue and the evidentiary issue. Of course, if the court has any questions about any of the other issues in the case, I'd be happy to answer those as well. I was also one of the happy to answer any questions the court may have. With respect to the Batson argument, the defendant argued in his opening brief on appeal that essentially the district court forgot the third step of the very familiar three-step framework and simply accepted the government's reasons for exercising the strike as those reasons. Judge Benton read what I was planning on emphasizing was that the judge, as far as the argument went by Mr. Swift at the trial, the district court considered that, found the defendant had not met his burden, he didn't have any evidence of his allegation of a pattern by my office, and found the defense has not shown that the express basis for making the strike was not the actual reason for exercising the strike. That's in our addendum at page 5 and on page 97 of the voir dire transcript. And that was, without using the word pretext, that was a way of saying that he hadn't proved that the government's reasons were pretextual. You agree though that normally, especially when Batson was new, judges went through the steps very carefully and this isn't a careful three-step one-two-three sort of approach. Your honor, I would respectfully disagree that the district judge wasn't careful here. The judge went through and made the third finding. I think that you may, you're certainly right that when Batson came down, I'm sure district judges may have elucidated more, citing the case probably with pin sites with the three steps, but I hear the judge listen to the argument that Mr. Swift gave after I gave those the reasons and Mr. Swift didn't frankly have any evidence other than his own professional statement and the court quickly dispatched those. With respect to the standard of review, I don't want to get too bogged down in the standard of review. I do think it goes to the merits here. In the briefing and then again here today, there's much discussion of these comparator jurors and the jury questionnaires and the reason the court didn't talk about the jury questionnaires, of course, is that the trial counsel did not bring any of that to the court's attention and I'm quite fond of the Tenth Circuit decision in Vann. While not precisely on point, I saw that Justice Gorsuch was on the panel and I think it talks about very well this sort of practice of holding back on the jury questionnaires and here we had a new counsel come in and bring all of this, attempt to bring all this to the court's attention in an untimely motion for new trial, but this court needn't and shouldn't be the first court to make findings going back and forth with respect to the comparator, the alleged comparator jurors. Well, Vann's a 2015 case and in Flower's case, the Supreme Court again said the standard here is clear error. Don't you think we should err on the side of applying clear error? Respectfully, Your Honor, we believe that because under Supreme Court precedent, the defendant is required to raise the Batson issue at the time during voir dire, that plain error applies here, but clean it, clear error, in the government's view, we end up in the same place and it's awkward to say clear error, Your Honor, because there's no findings on those comparators for this court to review for clear error if we're getting into the weeds on the comparator jurors and the jury questionnaires. With respect to the reasons given, I would disagree with the assertion that living with one's parents is not a race-neutral reason. We talk about the Second Circuit case that was that the court had actually held that being sheltered was a race-neutral reason. Certainly nothing on the face of the reason involves race. With respect to, I'll turn to the evidentiary issue unless the court has any other questions on the Batson issue. Counsel, could I ask you a question about an issue that the opposing counsel didn't cover, and that is the costs associated with the witnesses at the grand jury, and in particular, what the government's view on that. I find it interesting because the grand jury is somewhere between investigation and prosecution, and the statute says prosecution. We have a Highland case from 1990 that says it's really investigation, not prosecution. What's the government's best argument that these costs are taxable? Your Honor, we would encourage the court to follow the plain language of the statute, of course, that says prosecution, and I cited the dictionary definition. Of course, in this case, not only can the case not proceed unless it is presented to a bill, but in our district, we have a stipulated discovery order, and I was required to turn over stenographic transcripts of the grand jury to the defendant. I think this came up in the 1974 Tenth Circuit case, the Pomeroy case, that also addressed that issue, but even if the court were to draw a distinction between what happens before the actual return of the indictment and the rest of the case, in this case, we had to do that. It's also Jenks Act, so that they have it, they can cross-examine the witnesses and the like, so these were, to our view, very clearly used in the prosecution. Also, with the Highland case, thank you for bringing that up, Judge. In that case, the government sought to tax $100,000, this was like 30 years ago, $100,000 in investigative costs. Now, we saw $4,000 or $5,000 worth of actual costs listed in the statute. It seems pretty clear to me that, although it's not entirely clear from the opinion, that Highland was dealing with the entire cost of the government's investigation. Now, if we wanted to talk about the entire cost of the government's investigation in this case, it was extensive and I bet it would be in the six figures. I can't, I don't have a number, I never tried to, I didn't dream of that, but I do think Highland, when read carefully, of course, is distinguishable. Well, counsel, let me read you the words. Section 1920 does not include the cost of investigation leading to indictment period. Doesn't that bind us regardless of what you think or I think? Your Honor, again, I think it is general language. I would just suggest that in that case, I believe the word investigation was used to cover investigation in the macro sense of the police officers and the prosecutor's office. Here, we are only seeking the statutory listed ones. Thank you. With respect to the evidentiary issue, Your Honors, in the time I have remaining, I wanted you to know that it is true that the witness, Mr. Miller, did not expressly say, I saw the website. But as I've indicated in the briefing, we believe the district court was well  we believe that he did not expressly say, I saw the website. But as I've indicated, we believe where he, where Mr. Miller answered, you know, that there was a video on state snap social media that had my number linked to it, encouraging people to contact me. And as we emphasize, that's how defendant's own counsel, it seems, interpreted that statement because on cross-examination, he had, in his question, said, when you talk about seeing the while Mr. Sheets is correct in his brief that we did mention this to the grand jury in my closing, I went back and counted. It was one line and, you know, about a 15-page closing. And the more incriminating evidence that Mr. Miller gave the jury was that, and this isn't gun emojis, to Mr. Miller because he was using the state snaps brand, so to speak. And, you know, in this case, we had the defendant's palm print on the note that was found at the it's, he's using the specific account number that's on the note. His co-conspirator testified against him. And this Miller's testimony, while relevant, was by no means the crux of the case. It was, you know, two years before the home invasion. So, I think, unless the court has any other questions, I would intend to rest on the remainder of my brief and ask that the court affirm Mr. Adams' conviction and sentence. Very well. Seeing no further questions, thank you, Mr. Baburchak.  Thank you, Your Honor. Three quick points. First, the evidence that the government says really wasn't that important. At trial, they fought and fought and fought and fought to get it in. And now they're telling us today that it really wasn't that big of a deal. I don't think it has much credibility when they say that today. Second, there was a question regarding clear error or plain error. I mean, there was clearly a Batson hearing that was held in this case. So clear error prevails. Regarding the lack of findings by the district court, as Mr. Baburchak said, there was no real findings regarding these factors. The government still hasn't told us why a Black potential juror was struck because of a conviction, but the white people were deemed to be fair that had convictions. The government still hasn't told us why living with one's parents makes a person unfair. The government still hasn't told us, either at the district court level or here in their briefs or in an oral argument, why a white person who doesn't have a job can be fair, but a Black person that doesn't have a job can't be fair and must be struck. We haven't heard anything like that. Third, and really briefly regarding the grand jury, the cost of prosecution versus the cost of investigation. We cited case law from the Supreme Court that clearly finds that a grand and I think that's a clear distinction between the costs of prosecution that are allowed. Thank you, Your Honor. Very well. Thank you, counsel. We appreciate your appearance today and your arguments and briefing cases submitted.